**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

MALIKA HENRY,

        **Plaintiff,**

  - against -

**TURNER CONSTRUCTION COMPANY,**

        **Defendant.**



------------------------------------------------------X

**OPINION AND ORDER**

**09 Civ. 9366 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      Malika Henry filed this action against the Turner Construction Company alleging that Turner discriminated against her on the basis of race in violation of federal law.  Turner now moves to dismiss the complaint and compel arbitration on the grounds that Henry's claim is barred by an arbitration agreement that Henry signed upon beginning employment for Turner.  For the reasons discussed below, Turner's motion to dismiss and compel arbitration is granted.

## II.    BACKGROUND

      On or about April 1, 2002, Turner instituted an alternative dispute

-1-

resolution policy.[1]  The Turner Corporation Dispute Resolution Policy ("DRP")

provides for mediation or arbitration of all disputes between Turner and its

employees "related to or arising out of a current or former employment

relationship" with Turner.[2]  The DRP states with emphasis that employment with

Turner constitutes an employee's consent to be bound by the DRP both during

employment and after termination of employment.[3]

On September 7, 2007, Henry signed an acknowledgment of Turner's

DRP.[4]  Henry's employment as an administrative assistant for Turner began on

September 10, 2007, and lasted until Turner terminated her on January 15, 2008.[5]

Henry filed a charge of discrimination on March 4, 2008, under Title VII of the

Civil Rights Act of 1964[6] to the Equal Employment Opportunity Commission

---

[1]     2/19/10 Affidavit of Rodney Pope, vice president for employee
relations at Turner, in Support of Turner ("Pope Aff."), Ex. 1 to Turner's Motion to
Dismiss and Compel Arbitration ("Turner Motion"), ¶ 2.

[2]     DRP, Ex. 1 to Pope Aff.

[3]     See id. at 4.

[4]     Acknowledgment of Turner's Dispute Resolution Policy and
Procedures ("Acknowledgment"), Ex. 2 to Pope Aff.

[5]     Fact Statement, attached to 3/4/08 EEOC Charge of Discrimination
filed by Henry ("EEOC Charge"), attached to Henry's Complaint; see 1/15/08
Termination Letter, Ex. A to Henry's Memorandum in Opposition to Turner's
Motion to Dismiss and Compel Arbitration ("Opp. Mem.").

[6]     See 42 U.S.C. § 2000e-2(a)(1).

("EEOC"), alleging that her termination was wrongfully based on race.[7]  Turner

denied this charge in its entirety.[8]  On June 29, 2009, the EEOC dismissed the

charge, notified Henry that she would lose the right to sue on the charge in federal

court if she did not file suit within ninety days,[9] and stated, "Based upon its

investigation, the EEOC is unable to conclude the information obtained establishes

violations of [Title VII].  This does not certify that the respondent is in compliance

with the statutes."[10]

      Henry filed the present complaint on September 24, 2009, with this

Court's Pro Se Office, again alleging Title VII discrimination.[11]  On November 10,

2009, Chief Judge Loretta Preska granted Henry's request to proceed *in forma*

*pauperis*.[12]  On February 19, 2009, Turner moved to dismiss the complaint and

---

[7]    *See* Fact Statement, attached to EEOC Charge.

[8]    4/9/08 Letter from Turner's Counsel to EEOC ADR Coordinator ("4/9/08 Letter"), attached to Turner's Reply Memorandum.

[9]    The right to sue that is mentioned by the EEOC is subject to any arbitration agreements that the plaintiff may have signed.  *See infra* note 35.

[10]    6/29/09 EEOC Dismissal and Notice of Rights, attached to Complaint.

[11]    Complaint at 1.

[12]    9/24/09 Declaration in Support of Request to Proceed *In Forma Pauperis*.

compel arbitration.[13]

## III.   APPLICABLE LAW

### A.   Plaintiff's Pro Se Status

A pro se plaintiff is entitled to have its pleadings held to "less stringent standards than formal pleadings drafted by lawyers."[14]   Accordingly, a pro se plaintiff's papers should be interpreted "to raise the strongest arguments that they suggest."[15]

### B.   Arbitrability

The determination of whether a dispute is arbitrable under the Federal Arbitration Act[16] ("FAA") consists of two prongs:  "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."[17]   To find a valid agreement to arbitrate, a court must apply

---

[13]   Turner Motion; *see* Memorandum of Law of Defendant in Support of Motion to Dismiss Plaintiff's Complaint and Compel Arbitration ("Def. Mem.") at 2.

[14]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted).

[15]   *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quotation marks omitted).

[16]   9 U.S.C. §§ 1–14.

[17]   *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted).

the "generally accepted principles of contract law."[18]  "[A] party is bound by the

provisions of a contract that [it] signs, unless [it] can show special circumstances

that would relieve [it] of such obligation."[19]  It is well-established that "arbitration

is a matter of contract and a party cannot be required to submit to arbitration any

dispute which [it] has not agreed to so submit."[20]  A court should consider only

"whether there was an objective agreement with respect to the entire contract."[21]

Because there is "a strong federal policy favoring arbitration . . .

where . . . the existence of an arbitration agreement is undisputed, doubts as to

whether a claim falls within the scope of that agreement should be resolved in

favor of arbitrability."[22]  Thus, the Second Circuit has emphasized that

> any doubts concerning the scope of arbitrable issues should be
> resolved in favor of arbitration.  Accordingly, [f]ederal policy
> requires us to construe arbitration clauses as broadly as possible.
> We will compel arbitration unless it may be said with positive
> assurance that the arbitration clause is not susceptible of an

---

[18]    *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

[19]    *Id.*

[20]    *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)
(quotation marks omitted).

[21]    *Genesco,* 815 F.2d at 846.

[22]    *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307
F.3d 24, 28 (2d Cir. 2002) (quotation marks and citations omitted).

interpretation that covers the asserted dispute.[23]

However, although federal policy favors arbitration, it is a matter of consent under

the FAA, and "a party cannot be required to submit to arbitration any dispute

which [it] has not agreed so to submit."[24]  "[I]f federal statutory claims are

asserted, [a court] must consider whether Congress intended those claims to be

nonarbitrable . . . ."[25]  It is well settled that Congress intends Title VII claims to be

arbitrable.[26]

## C.     Waiver of Agreement to Arbitrate

The FAA requires a court to determine whether an arbitration

agreement has been waived and is thereby unenforceable.[27]  "'[T]here is a strong

presumption in favor of arbitration[, and] waiver of the right to arbitrate is not to

---

[23]     *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d
Cir. 1995) (quotation marks and citations omitted). *Accord WorldCrisa Corp. v.
Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

[24]     *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252
F.3d 218, 224 (2d Cir. 2001) (quotation marks omitted).

[25]     *Genesco,* 815 F.2d at 844.

[26]     *See, e.g.*, *14 Penn Plaza LLC v. Pyett,* 129 S.Ct. 1456, 1467 (2009).

[27]     *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995)
(describing the waiver defense as a "statutorily mandated inquiry in [9 U.S.C.] § 3
cases").

be lightly inferred.'"[28]  "[A]ny doubts concerning whether there has been a waiver are resolved in favor of arbitration."[29]

A waiver determination is highly fact specific and no bright line rule is applied, but three factors are considered: "(1) the time elapsed from when the litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice."[30]  Although an extensive amount of delay between the commencement of an action and request for arbitration may suggest waiver, "delay in seeking arbitration does not create a waiver unless it prejudices the opposing party."[31]  Similarly, the amount of litigation that occurs before an arbitration request will result in waiver only when the substance of that litigation prejudices the opposing party.[32]  Merely answering on the merits, appearing at hearings, and participating

---

[28]     *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (alterations in original) (quoting *Coca-Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001)).

[29]     *Louis Dreyfus*, 252 F.3d at 229 (quotation marks omitted).

[30]     *Id.*

[31]     *Leadertex, Inc. v. Morgantown Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995).

[32]     *See Thyssen*, 310 F.3d at 105.

in discovery, without more, will not necessarily constitute a waiver.[33]  However,

"engag[ing] in protracted litigation that prejudices the opposing party" will result

in a waiver of the right to arbitration.[34]  Apart from litigation, "the mere

involvement of an administrative agency in the enforcement of a statute is not

sufficient to preclude arbitration."[35]

Two types of prejudice are possible: substantive prejudice and

prejudice due to excessive cost and time delay.

> "Prejudice can be substantive, such as when a party loses a motion
> on the merits and then attempts, in effect, to relitigate the issue by
> invoking arbitration, or it can be found when a party too long
> postpones [its] invocation of [its] contractual right to arbitration,
> and thereby causes [its] adversary to incur unnecessary delay or
> expense."[36]

## IV.   DISCUSSION

### A.   Agreement to Arbitrate and Its Scope

---

[33]    *See General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 891 F. Supp. 946, 953 (S.D.N.Y. 1995).

[34]    *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000).

[35]    *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28–29 (1991). *Accord Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 98 (D.D.C. 2005) (holding that a plaintiff who received a "right to sue" letter from the EEOC still had to comply with an arbitration clause and submit his complaint to the forum as indicated in the clause).

[36]    *Thyssen*, 310 F.3d at 105 (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)).

The existence of a valid arbitration agreement is not disputed in this
case. Henry bound herself to the DRP by accepting employment with Turner and
signing a written document acknowledging the DRP.[37] Henry does not deny an
intent to be bound to arbitrate disputes with Turner. Nor does she attack the
substantive validity of the DRP, allege that any procedural defects occurred during
the contracting process, or assert any other general contract defenses, such as
fraud.[38] Nonetheless, Henry argues that she was justified in refusing to comply
with the DRP because she was unable to use arbitration to defend herself "during
the time of termination."[39] However, the DRP's purpose is not to prevent disputes
— it is designed to equitably resolve them.[40]

Because there is an arbitration clause binding on both parties, the next
question is "whether the particular dispute sought to be arbitrated falls within
the scope of the arbitration agreement."[41] The DRP's scope is broad and explicit

---

[37]     *See* Acknowledgment ("I have read it and understand that this policy
provides a program for the equitable resolution of covered disputes, which include
all matters arising out of my employment that are covered by law or statute.").

[38]     *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n.11 (1984) ("[A]
party may assert general contract defenses such as fraud to avoid enforcement of
an arbitration agreement.").

[39]     Opp. Mem. at 1.

[40]     *See* DRP at 1.

[41]     *Hartford Acc. & Indem. Co.*, 246 F.3d at 226.

-9-

— it covers all disputes between Turner and Turner's present and former employees relating to or arising from an employment relationship. Race-related employment discrimination claims clearly fall within this definition. And because Congress intends for Title VII claims to be arbitrable,[42] there is no reason to exclude these claims from the scope of the DRP.

### B.   Waiver of the Right to Arbitrate

Turner did not waive its right to arbitrate its dispute with Henry. *First*, by means of the present motion, Turner has invoked its right to arbitrate within two months after service.[43] This short period of time does not by itself infer a waiver of arbitration.[44]

*Second*, this litigation is at a very early stage. After receiving the initial complaint, Turner's first action was to move to dismiss and compel

---

[42]     *See supra* note 26 and accompanying text.

[43]     *See* Turner Motion; Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Complaint, attached to Opp. Mem. (service acknowledged 12/28/09).

[44]     *Compare PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding that a five-month delay did not by itself infer waiver of arbitration), *and Rush v. Oppenheimer Co.*, 779 F.2d 885, 887 (2d Cir. 1985) ("It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate . . . ."), *with Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.3d 1574, 1577–78 (2d Cir. 1991) (holding that defendants' eighteen-month delay in compelling arbitration contributed to a waiver of arbitration).

arbitration. The parties have not yet engaged in any discovery or prepared for trial.

However, in construing Henry's arguments liberally, she argues that Turner's participation in the EEOC investigation constituted a waiver of the arbitration clause. However, during the EEOC mediation, Turner explicitly told the EEOC that "participation in EEOC mediation shall not be considered as a waiver . . . of Turner's right to compel arbitration."[45] Although the EEOC informed Henry that she has the right to file a lawsuit against Turner within ninety days of dismissal of her charge, this right is subject to the arbitration agreement.[46]

*Finally*, Henry would not be prejudiced by being compelled to arbitrate. Henry does not want to arbitrate because she does not expect a "fair and impartial hearing with a company that will not even acknowledge my case and all it's [sic] seriousness to me and my career in this Industry."[47] This argument, which ignores the fact that the DRP requires the arbitrator or mediator to be selected under the rules of the American Arbitration Association,[48] is unavailing. This is not the type of prejudice that supports a finding of waiver, as Turner seeks only to

---

[45]   4/9/08 Letter.

[46]   *See Hughes*, 384 F. Supp. 2d at 98.

[47]   Opp. Mem. at 3.

[48]   DRP at 1.

-11-

enforce its agreement to arbitrate.[49]

## V.     CONCLUSION

For the foregoing reasons, Turner's motion to dismiss the complaint

and compel arbitration is granted.  The Clerk of Court is directed to close this

motion (Docket No. 5) and this case.


SO ORDERED:


Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             June 14, 2010

---

[49]      *See Louis Dreyfus*, 252 F.3d at 230 ("Prejudice does not refer to
enforcing a bargained-for agreement . . . .").

## - Appearances -

*Plaintiff (Pro Se)*

Malika Henry
733 Amsterdam Avenue
New York, NY 10025
(212) 932-2518

*For Defendant:*

Gregory R. Begg, Esq.
Scott W. Carbone, Esq.
PECKAR & ABRAMSON, P.C.
70 Grand Avenue
River Edge, NJ 07661
(201) 343-3434